**Jan Abraham DuTOIT and Marie DuToit, his wife, Plaintiffs,**

v.

**STRATEGIC MINERALS CORPORATION and Vametco Minerals Corporation, Defendants.**

**Civ. A. No. 88–563–JLL.**

United States District Court,
D. Delaware.

April 4, 1991.

---

**1.** Defendants Fielding Juggins Money & Stewart Ltd. and PWS Marine Ltd. oppose this motion.

Paul M. Lukoff and Wade Scott of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., Louis S. Fine and Harvey L. Anderson of Fine & Staud, Philadelphia, Pa., of counsel, for plaintiffs.

James F. Bailey of Bailey & Wetzel, P.A., Wilmington, Del., Joseph Goldberg and Kurt A. Denke of Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., of counsel, for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This diversity case arises out of an industrial accident which occurred in Bophuthatswana, a homeland created by the South African government and granted independence from South Africa in 1977. Plaintiff Jan Abraham DuToit, a citizen and resident of South Africa, worked for defendant Vametco Minerals Corporation ("Vametco") at a vanadium ore processing mill it operates in Bophuthatswana, and was injured when he was struck by a hopper which broke from its supports. Docket Item ["D.I."] 1 at ¶¶ 1, 8, 9. Marie DuToit, Mr. DuToit's wife, seeks recovery for loss of consortium. The case made its way into the District of Delaware because Vametco is a Delaware corporation, with its principal place of business in Danbury, Connecticut.

D.I. 1 at ¶ 3; D.I. 8 at ¶ 3.[1] Vametco is a wholly owned subsidiary of defendant Strategic Minerals Corporation ("Strategic"), a Connecticut corporation with its principal place of business in Connecticut. D.I. 1 at ¶¶ 2, 4; D.I. 8 at ¶¶ 2, 4. Plaintiffs originally claimed Strategic was liable as Vametco's alter ego.

Presently before the Court are defendants' motion for summary judgment as to Strategic and for dismissal on forum non conveniens grounds, D.I. 22, and plaintiffs' motion for voluntary dismissal. D.I. 23. Having considered the parties' briefs on both motions, D.I. 20, 21, 24–26, 28, 29, and having heard oral argument, D.I. 31, the Court will grant plaintiffs' motion for voluntary dismissal for the reasons stated below.

### FACTUAL BACKGROUND

A review of the somewhat complex procedural history of this litigation is necessary to put the Court's decision in the proper context. Plaintiffs initiated lawsuits in the following five jurisdictions in connection with the accident:

(1) In the United States District Court for the Eastern District of Pennsylvania, No. 88–7505, filed September 28, 1988.

(2) In the Court of Common Pleas of Philadelphia County, Pennsylvania, September Term, 1988, No. 4750, filed September 30, 1988.

(3) This action in the District of Delaware, filed on October 11, 1988.

(4) In the Superior Court for the Judicial District of Danbury, Connecticut, filed October 18, 1988.

(5) In the Supreme Court of Bophuthatswana, Case No. T–1163/89, filed October 24, 1989.

D.I. 28 at 3; D.I. 29 at A1–A10. Plaintiffs' purpose in filing suits in various courts was to avoid a statute of limitations bar to their claim in the event that one or more of the above-listed courts did not have jurisdiction over the defendants. D.I. 31 at 31.

On January 18, 1989, this action was stayed by agreement of the parties pending the outcome of the case in the Eastern District of Pennsylvania. D.I. 14. The case proceeded in the Eastern District as follows. Defendants filed a motion to dismiss Vametco for lack of personal jurisdiction and a motion to dismiss on forum non conveniens grounds. The Honorable Marvin L. Katz denied the motions on December 7, 1988, D.I. 29 at A2, apparently to permit discovery which would shed some light on the jurisdictional issue as well as the liability of defendant Strategic. Discovery proceeded for more than a year, after which defendants renewed their motion to dismiss Vametco for lack of personal jurisdiction and their motion to dismiss on forum non conveniens grounds. *Id.* at A4. Defendant Strategic also sought summary judgment on the ground that Strategic is not Vametco's alter ego, and, thus, Strategic has no liability.

In an April 26, 1990 opinion, Judge Katz dismissed Vametco for lack of personal jurisdiction and granted summary judgment in favor of Strategic, thus finding it unnecessary to address defendants' forum non conveniens motion. *Dutoit v. Strategic Minerals Corp.,* 735 F.Supp. 169 (E.D.Pa.1990). The Pennsylvania state court action, which had been removed to the Eastern District, was dismissed by Judge Katz on June 1, 1990 on the same grounds. D.I. 21 at A123. On December 5, 1990, the Third Circuit affirmed Judge Katz's April 26 opinion. *DuToit v. Strategic Minerals Corp.,* 922 F.2d 830 (3d Cir.1990).

Plaintiffs then asked defendants to enter into a stipulation of voluntary dismissal without prejudice of the case pending here. D.I. 25A; D.I. 31 at 24–25, 38. Defendants refused to so stipulate, and, after the Court advised the parties on January 11, 1991 that this action would resume, defendants filed a motion to dismiss on forum non conveniens grounds on January 15, 1991. D.I. 22. Three days later, on January 18,

---

1. The basis for defendants' position that the Connecticut court lacks jurisdiction over Vametco, D.I. 20 at 32 n. 4, is unclear given their admission in their Answer that Vametco is a Delaware corporation with its principal place of business in Connecticut.

1991, plaintiffs filed a motion for dismissal without prejudice. D.I. 23.

## DISCUSSION

Because defendants have filed an answer in this case, D.I. 8, and have refused to stipulate to a voluntary dismissal without prejudice, plaintiffs invoke the Court's discretion to enter a voluntary dismissal without prejudice under Rule 41(a)(2), Fed.R. Civ.P., which reads, "[A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." In considering a Rule 41(a)(2) motion, "the district court must weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate." *McCants v. Ford Motor Co.*, 781 F.2d 855, 857 (11th Cir.1986). *See also Lunn v. United Aircraft Corp.*, 26 F.R.D. 12, 13 (D.Del.1960) (Rule 41(a)(2) motion "will be determined after attempting to secure substantial justice to both parties").

Courts generally agree that Rule 41(a)(2) motions "should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit." *In re Paoli R.R. Litigation*, 916 F.2d 829, 863 (3d Cir.1990) (in dictum, Third Circuit endorses "liberal" view toward granting voluntary dismissals). *See also McCants*, 781 F.2d at 857; *Westinghouse Elec. Corp. v. United Elec. Radio & Machine Workers*, 194 F.2d 770, 771 (3d Cir.), *cert. denied*, 343 U.S. 966, 72 S.Ct. 1060, 96 L.Ed. 1362 (1952); 5 Moore's Federal Practice § 41.05[1] at 41–62 n. 51 and authorities cited therein. Defendants claim that they would be prejudiced in the following respects were the Court to grant plaintiffs' motion for voluntary dismissal: (1) plaintiffs' request for dismissal is an act of forum shopping intended to avoid an adverse result on the forum non conveniens issue; (2) dismissal will deprive defendants of a federal forum to determine whether a court in Bophuthatswana, a nation which the United States does not recognize diplomatically, may still be considered an adequate alternative forum for purposes of forum non conveniens analysis; (3) defendants have expended considerable time and money in presenting their motion to the Court. D.I. 26 at 7; D.I. 28 at 2. The Court proceeds to address each of defendants' concerns.

Defendants accuse plaintiffs of seeking dismissal to avoid what will most likely be a ruling in defendants' favor on their forum non conveniens motion given this Court's decision in *Dawson v. Compagnie des Bauxites de Guinee*, 593 F.Supp. 20 (D.Del.), *aff'd without opinion*, 746 F.2d 1466 (3d Cir.1984), in which the Court concluded under similar circumstances that Guinea was an adequate alternative forum. Defendants claim that plaintiffs are attempting to avoid an adverse forum non conveniens determination by this Court which would effectively terminate the Connecticut litigation as well by virtue of direct estoppel.

Plaintiffs deny that they are forum shopping and contest the defendants' assertion that the plaintiffs would lose here on the forum non conveniens question. Plaintiffs consider *Dawson* clearly distinguishable because, as was stated in the opinion, the United States recognizes Guinea. Plaintiffs' proffered explanation for seeking voluntary dismissal of this action at this stage is that discovery in the Eastern District revealed that some Vametco personnel and documents are located in Connecticut, whereas no evidence is located in Delaware, making Connecticut a more appropriate forum for litigation of plaintiffs' claim. D.I. 24 at 23–24; D.I. 31 at 25, 32–33. Defendants doubt the sincerity of plaintiffs' position, because, they argue, none of Vametco's officers in Connecticut have any knowledge relevant to the case nor are any pertinent documents to be found in Connecticut. D.I. 26 at 19–20; D.I. 31 at 40–41. Affidavits of Strategic's and Vametco's officers appear to support defendants' skepticism of plaintiffs' express motive. D.I. 21 at A68–A80.

■ The case law suggests that a plaintiff's purported desire to avoid a potential adverse determination does not warrant de-

nial of voluntary dismissal unless the plaintiff's motion follows an indication by the court that it intends to rule against the plaintiff on the pending motion. *Compare Meltzer v. National Airlines, Inc.,* 31 F.R.D. 47, 49–50 (E.D.Pa.1962) (alleged desire to avoid unfavorable ruling on motion to transfer not grounds for denial of motion for voluntary dismissal) *with Piedmont Interstate Fair Ass'n v. Bean,* 209 F.2d 942, 948 (4th Cir.1954) (abuse of discretion to grant voluntary dismissal after trial judge had expressed adverse opinion of merits of claim); *Moore v. C.R. Anthony Co.,* 198 F.2d 607, 608 (10th Cir.1952) (proper to deny motion for voluntary dismissal sought after case had been tried and judge had expressed intention to rule in defendants' favor); *International Shoe Co. v. Cool,* 154 F.2d 778, 780 (8th Cir.), *cert. denied,* 329 U.S. 726, 67 S.Ct. 76, 91 L.Ed. 628 (1946) (abuse of discretion to grant voluntary dismissal after court had announced intention to direct verdict for defendant). *See also New York, Chicago & St. Louis R.R. Co. v. Vardaman,* 181 F.2d 769, 771 (8th Cir.1950) (allegation that dismissal deprived defendant of expected favorable result on motion to transfer does not constitute prejudice).

■ Here, of course, the Court has not indicated how it would rule on the forum non conveniens issue in this case; defendants' assertions about plaintiffs' motive are based on what they anticipate would be a ruling in their favor given the Court's earlier holding in *Dawson.* Rather than searching plaintiffs' souls for their true motive in seeking voluntary dismissal, an endeavor better left to a divine authority, suffice it to say that even if the Court were to rule in defendants' favor on the forum non conveniens question, it is far from clear that such a ruling would estop the Connecticut court's consideration of the issue. In *Pastewka v. Texaco, Inc.,* 420 F.Supp. 641, 646 (D.Del.1976), *aff'd,* 565 F.2d 851 (3d Cir.1977), the Honorable Murray M. Schwartz held that forum non conveniens dismissal by one federal district court precluded another district court's consideration of the forum non conveniens question "absent demonstration of any dif-

ference in objective criteria or material facts underlying those criteria." While the Connecticut state courts have adopted the federal forum non conveniens analysis of *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), as a frame of reference, *see, e.g., Picketts v. International Playtex, Inc.,* 215 Conn. 490, 498, 576 A.2d 518, 522 (1990); *Union Carbide Corp. v. Aetna Cas. & Sur. Co.,* 212 Conn. 311, 320, 562 A.2d 15, 20 (1989), the Connecticut Supreme Court has emphasized that "federally crafted guidelines do not impose binding directives upon our Connecticut common law, but rather should be viewed as illuminating the variety of competing private and public considerations that a trial court must weigh" in forum non conveniens analysis. *Union Carbide Corp.,* 212 Conn. at 320, 562 A.2d at 20. In fact, the Connecticut Supreme Court has expressed a willingness to assign greater weight to procedural differences between jurisdictions, *e.g.,* more liberal discovery rules, than federal courts generally would in the analysis of whether the proposed alternative forum is adequate. *Picketts,* 215 Conn. at 506–09, 576 A.2d at 526–27. The *Picketts* case thus suggests the possibility of some variation in the "objective criteria" examined by Connecticut state courts and federal courts in forum non conveniens analysis. *Cf. Domingo v. States Marine Lines,* 340 F.Supp. 811, 817 (S.D.N.Y.1972) (federal court not bound by state court's denial of forum non conveniens motion because federal court's decision required evaluation of different objective criteria, *e.g.,* federal court's crowded docket).

In addition, while clearly no evidence is located in Delaware, the fact that, as plaintiffs claim, some witnesses and documents are located in Connecticut would arguably alter the "material facts" underlying the Connecticut court's forum non conveniens analysis. *See Mizokami Bros. v. Mobay Chemical Corp.,* 660 F.2d 712, 716 (8th Cir.1981) (Missouri district court could relitigate forum non conveniens issue after Arizona district court had dismissed on forum non conveniens grounds because plaintiff

demonstrated different contacts between new forum and underlying dispute). The Court does not intend to suggest with certainty that the Connecticut court could properly consider the forum non conveniens issue anew despite a forum non conveniens dismissal by this Court. The discussion above merely indicates that even if the Court were to dismiss this action on forum non conveniens grounds, it is doubtful that such a ruling would bring an end to the Connecticut litigation as defendants anticipate. Given the plaintiffs' obsession with litigating their claim in the United States, they are unlikely to concede the direct estoppel effect of an adverse forum non conveniens ruling here, so at the very least the parties would have to brief the issue for the Connecticut court. Therefore, voluntary dismissal of this action at this stage will not make defendants much worse off than they would be were the Court to rule in their favor on the forum non conveniens issue. In fact, dismissal here saves the parties the time and expense of litigating the estoppel question in Connecticut.

■ Defendants' next claim of prejudice is that voluntary dismissal would deprive them of a federal forum for determination of the "federal law issue" of whether a nation unrecognized by the United States government can be considered an adequate alternative forum for purposes of forum non conveniens analysis. Defendants contend that a federal court is better equipped than a state court to arrive at a "correct" resolution of the question. Defendants' argument again assumes too much. First, it assumes that the "correct" resolution of the issue is one in their favor. Second, is assumes that the Connecticut court will not arrive at that result. Essentially, then, defendants' second claim of prejudice is identical to their first, namely, that voluntary dismissal deprives them of a decision in their favor that would preclude a ruling to the contrary by the Connecticut court. However, as discussed above, even if the Court decided Bophuthatswana's diplomatic status has no bearing on the forum non conveniens question and granted defendants' motion to dismiss, the Connecticut court could conceivably deny forum non conveniens dismissal by analysis of different objective criteria or material facts. Again, a ruling in defendants' favor by this Court would not necessarily have the desired effect of terminating this litigation in the United States.

■ Finally, defendants argue they would be prejudiced by dismissal because the time and expense they have invested in preparing and presenting their motion to dismiss will have been wasted. The Third Circuit has on more than one occasion upheld a denial of a voluntary dismissal when the district court's decision rested primarily on concern over financial prejudice to the defendant. *See, e.g., Ferguson v. Eakle,* 492 F.2d 26, 29 (3d Cir.1974) (appropriate to deny dismissal after completion of extensive discovery and pretrial conference to avoid financial prejudice to defendant); *Ockert v. Union Barge Line Corp.,* 190 F.2d 303, 305 (3d Cir.1951) (denial of dismissal once trial had begun proper, considering defendant had gone to expense of securing attendance of witnesses from various parts of the country). However, in both *Ferguson* and *Ockert,* the proceedings were much more advanced than those in this case. At an early stage of the proceedings, courts typically grant motions for voluntary dismissal provided plaintiff pays expenses defendant incurred in making a motion which the court declines to consider. *See, e.g., McCants v. Ford Motor Co.,* 781 F.2d 855, 857, 860 (no abuse of discretion to dismiss case after completion of one year of discovery and submission of motion for summary judgment; case remanded to district court to consider conditioning dismissal on payment of costs); *Southern Ry. Co. v. Chapman,* 235 F.2d 43, 43 (4th Cir. 1956) (voluntary dismissal conditioned on payment of costs appropriate when case had only progressed to stage of defendant's filing motion to transfer); *Peifer v. Royal Bank,* 121 F.R.D. 39, 39, 41 (M.D.Pa. 1986) (granting dismissal with costs after defendant filed motion for summary judgment which had not been preceded by any discovery); *Meltzer v. National Airlines, Inc.,* 31 F.R.D. 47, 49, 51 (E.D.Pa.1962)

**88**

(granting dismissal with costs after defendant filed motion to transfer but before any discovery). The Court might be willing to condition dismissal on payment of defendants' expenses except for the fact that defendants can undoubtedly submit to the Connecticut court the briefs on forum non conveniens they filed here, perhaps with minor changes to incorporate Connecticut law. Thus, the effort expended on preparing briefs for this Court will not be wasted. In fact, as mentioned above, dismissal will spare the parties the time and expense of briefing the direct estoppel question for the Connecticut court.

## CONCLUSION

For the reasons stated above, the Court will grant plaintiffs' motion for voluntary dismissal.